UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

July 31, 2013

LETTER TO COUNSEL:

RE: *Parrish H. Phillips v. Carolyn W. Colvin, Acting Commissioner of Social Security Administration*
Civil No. TJS-12-1620

Dear Counsel:

On June 1, 2012, the Plaintiff, Parrish H. Phillips ("Mr. Phillips"), petitioned this Court to review the Social Security Administration's final decision to deny his applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") benefits. (ECF No. 1). The parties have filed cross-motions for summary judgment. (ECF Nos. 14, 19). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] (ECF Nos. 6, 7). I find that no hearing is necessary. *See* Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both the Acting Commissioner's motion and the Plaintiff's motion and will remand for further proceedings. This letter explains my rationale.[2]

Mr. Phillips filed his applications for DIB and SSI on August 25, 2008. (Tr. 188-191, 192-197). In his applications, Mr. Phillips alleged disability beginning on September 1, 2007. (Tr. 188, 192). The claims were denied initially on October 23, 2008 (Tr. 107-111) and on reconsideration on December 10, 2008. (Tr. 112). A hearing was held before an Administrative Law Judge ("ALJ") on July 8, 2010. (Tr. 60-102). On July 16, 2010, the ALJ determined that Mr. Phillips was not disabled under the Social Security Act. (Tr. 21-35). On April 20, 2012, the Appeals Council denied Mr. Phillips' request for review (Tr. 5-8), so the ALJ's decision constitutes the final, reviewable decision of the agency.

---

[1] This case was originally assigned to the Honorable Paul W. Grimm, who is now a United States District Judge. On December 7, 2012, this case was reassigned to Magistrate Judge Stephanie A. Gallagher. On June 18, 2013, this case was reassigned to me.

[2] I acknowledge with gratitude the assistance of Bridgette Makia, a student at the Georgetown University Law Center, who served as an intern in my Chambers this summer and significantly assisted in the research and writing of this opinion.

The ALJ held that Mr. Phillips was not disabled within the meaning of the Social Security Act. (Tr. 21-35). He found that Mr. Phillips suffered from the severe impairments of diabetes (peripheral nerve damage and half foot amputation) and legal blindness in the left eye. (Tr. 23). Despite these impairments, the ALJ determined that Mr. Phillips retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the additional limitation that he can do work that occasionally requires stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes and scaffolds or balancing), and that has a sit/stand option that allows him to sit or stand, alternatively, at will. He requires a cane for balance and he is limited to jobs that can be performed using his right eye for vision. Because of the pain he experiences, he can perform jobs consisting of unskilled, routine and repetitive tasks.

(Tr. 24). The ALJ determined, based on the testimony of a vocational expert ("VE"), that Mr. Phillips could perform two jobs that exist in significant numbers in the national economy: Security Guard (DOT #: 379.367-010), of which there are approximately 300 positions in the local economy and 90,000 nationwide, and Assembler (DOT #: 734.687-018), of which there are approximately 1,000 positions in the local economy and 100,000 nationwide. (Tr. 29). Accordingly, the ALJ found Mr. Phillips was not disabled under the Social Security Act. (Tr. 29).

Mr. Phillips presents five arguments on appeal: (1) that the ALJ committed reversible error in not following the "treating physician rule" (ECF No. 14-1 at 24); (2) that the ALJ cited "no acceptable medical source to support his sit/stand option at will" (ECF No. 14-1 at 29); (3) that the ALJ incorrectly failed to find any severe mental impairments (ECF No 14-1 at 33); (4) that the ALJ incorrectly determined that Mr. Phillips does not meet or equal Medical Listing 4.02 (ECF No. 14-1 at 34); and (5) that the ALJ's hypotheticals to the VE were improper and incomplete. (ECF No. 14-1 at 36). Mr. Phillips argues that this case should be reversed or, alternatively, remanded to the Commissioner for further proceedings. (ECF No. 14-1 at 38-39).

With regard to the Plaintiff's first argument, this Court finds that the ALJ erred in rejecting the opinion of Mr. Phillips' treating physician, Dr. Sowah.[3] The ALJ declined to give

---

[3] The Plaintiff also argues that the ALJ should have given controlling weight to the opinion of Mr. Phillips' other treating physician, Dr. Connie Chen. (ECF No. 14-1 at 28). The ALJ stated that he gave little weight to Dr. Chen's assessment that Mr. Phillips' vision precluded him from working because that issue was one reserved to the Commissioner. (Tr. 27). While "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance," an ALJ must consider them. SSR 96-5p. The Court finds that the ALJ appropriately considered Dr. Chen's report in determining the RFC, but that other elements of Mr. Chen's report were not appropriately referenced in the ALJ's hypotheticals to the vocational expert—an issue I address below.

weight to Dr. Sowah's opinion that Mr. Phillips has severe neuropathy or to his assessment that Mr. Phillips would miss thirty days of work each year. In deciding to disregard Dr. Sowah's opinion about Mr. Phillips' peripheral neuropathy, the ALJ compared Dr. Sowah's May 2010 medical assessment with a disability claim examiner's consultative report from 2008, Mr. Phillips' statements to his treatment provider in 2008, and Mr. Phillips' reliance on aspirin as his primary form of pain relief. (Tr. 24). In rejecting Dr. Sowah's opinion that Mr. Phillips would miss thirty days of work each year, the ALJ stated that Dr. Sowah's opinion was "not supported by the balance of the record" or by the claimant's day-to-day functioning. (Tr. 27) (finding that Mr. Phillips walks to a convenience store several times a week, carries light groceries home, walks up and down three flights of stairs, takes care of household chores, and takes only aspirin for pain).

The ALJ applied the law incorrectly in rejecting Dr. Sowah's opinions. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The law requires that "if a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." SSR 96-2p. The requirement that a treating physician's opinion not be inconsistent does not mean that it must be supported directly by all of the evidence in the record. *Id*. Rather, "as long as there is no other substantial evidence in the case record that *contradicts* or *conflicts* with the opinion," the opinion should be accorded controlling weight. *See* SSR 96-2p (emphasis added); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive *contradictory* evidence exists to rebut it.") (emphasis added).

Although the 2008 and 2009 reports on Mr. Phillips' health are not consistent with the 2010 reports alleging worsened health conditions, they cannot appropriately be depicted as conflicting or contradictory. Rather, Dr. Sowah's 2010 report and Mr. Phillips' testimony during the hearing indicate that the claimant's poor health has deteriorated since 2008. The ALJ disregarded relevant evidence that indicates this may well be the case. First, the ALJ ignored that Dr. Sowah's medical reports document progressively worsening health conditions. (*See* Tr. 733-36 (Dr. Sowah's November 26, 2008 report stating that he could not elicit Mr. Phillips' left knee reflex, that Mr. Phillips' reported "occasional tingling" in the amputated foot, and that he had a loss of pain sensation due to mild neuropathy); Tr. 725 (Dr. Sowah's November 13, 2009 report stating "painful neuropathy worse on the right mid-foot" and "left foot excessively dry"); Tr. 752 (Dr. Sowah's May 13, 2010 report documenting "severe neuropathy" and "definitive peripheral neuropathy limiting ability to walk without a cane")). Second, the ALJ ignored Mr. Phillips' various statements in the record that indicate his health conditions have changed, as have his day-to-day activities. (*See* Tr. 276 (function report dated April 28, 2009 reporting that Mr. Phillips' "condition continues to worsen."); Tr. 71 (stating that the pain and tingling in his foot is now constant); Tr. 76 (stating that he leaves his room twice a day and otherwise stays in his room with his leg propped on a chair); Tr. 77 (stating that he no longer shops for himself); Tr. 90

(stating that diabetes affects his body more now than it did in the past)).[4] In ignoring these parts of the record, the ALJ failed to take note of a rational explanation for the differences between the earlier reports and the more recent reports. Accordingly, the Court finds that the ALJ erred in determining that Dr. Sowah's opinions should be rejected. On remand, the ALJ must address the possibility that Mr. Phillips' health has deteriorated since 2008 and that Dr. Sowah's reports accurately portray Mr. Phillips' current health issues.

In addition, on remand the ALJ must properly evaluate Mr. Phillips' credibility in determining his RFC. In his written opinion, the ALJ found that Mr. Phillips' medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (Tr. 25). The ALJ cited the claimant's "presentment at the hearing" and the "inconsistencies in the allegations contained in Adult Function Reports from March and September 2008." (Tr. 25-26). Rather than addressing the possibility that the differing opinions might correspond with a change in Mr. Phillips' health,[5] the ALJ determined that Mr. Phillips had engaged in a "pattern of contradictory allegations on questions of central importance to the issue of disability [that] severely undermin[ed] [his] credibility." (Tr. 26).

The ALJ's determination that Mr. Phillips is not credible is not supported by substantial evidence. When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, objective evidence of the pain itself is not required; the ALJ must evaluate any evidence "relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 594-95 (1996). In this case, as the ALJ determined that Mr. Phillips' comments were inconsistent with his comments in 2008 and 2009, he gave little weight to Mr. Phillips' statements at the 2010 hearing that his pain is a "nine" on a zero to ten scale and that he cannot balance without a cane even when he is standing in one spot. (Tr. 72, 74). As previously noted, the ALJ also failed to consider the fact that Mr. Phillips stays in his room most of the day with his leg up and that he is being treated with a medication that can alleviate nerve pain. (Tr. 76, 744). On remand, addressing the Plaintiff's potential health changes and reconsidering Dr. Sowah's opinions as to Mr. Phillips' neuropathy and current condition could affect the ALJ's

---

[4] Additionally, despite the claimant's comment at the hearing that he has only been given aspirin for his pain, his prescription record reveals that he has been prescribed gabapentin—a medication used to treat pain caused by peripheral neuropathy. *See* Tr. 744; Mayo Clinic, *Peripheral Neuropathy*, November 2, 2011, http://www.mayoclinic.com/health/peripheral-neuropathy/DS00131/DSECTION=treatments-and-drugs (explaining that diabetes is the most common cause of peripheral neuropathy and that pain from peripheral neuropathy can be treated with gabapentin).

[5] Notably, the ALJ references an Adult Function Report from March 2008 in his assessment of the Plaintiff's credibility. (Tr. 26). The Plaintiff underwent two amputations in 2008, one of his right big toe in January and one of the distal portion of his right foot in July. (Tr. 26). The March 2008 Function Report reflects Mr. Phillips' condition and activities prior to the second, more significant amputation and thus makes an especially inappropriate comparison point.

determination of Mr. Phillips' credibility and, consequently, his RFC. *See* SSR 96-9p. (noting that a hand-held assistive device used for balance because of neurological impairment may significantly erode an individual's occupational base).

The ALJ should also properly consider Mr. Phillips' pain and the side effects of his medication in the determination of his RFC. *See* SSR 96-8p ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication) [and the effects] of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.") Mr. Phillips' treating physician indicated that the side effects of Mr. Phillips' medication and of his current pain could cause substantial restrictions in his capacity for sustained mental alertness and concentration. (Tr. 754). Mr. Phillips' counsel shared this information with the ALJ during the hearing. (Tr. 65). On remand, the ALJ should consider the impacts of Mr. Phillips' pain and the side effects of his medication on his mental capacity in making the RFC assessment. *See* SSR 96-8p ("Medical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional.")

Finally, the Court finds that the ALJ's hypotheticals to the VE were incomplete. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). The ALJ did not appropriately represent Mr. Phillips' vision impairments to the VE. Specifically, Mr. Phillips' treating physician, Dr. Chen, specified in her 2010 report that Mr. Phillips' visual impairment would significantly interfere with his ability to perform activities requiring hand-eye coordination or to see and respond quickly to hazards in the workplace. (Tr. 758-59). These impairments could be especially important for the position of an assembler, which involves small objects, hand-eye coordination, and visual inspections. *Cf. Knox v. Astrue*, No. 10-1125, 2011 WL 5513206, at *4 (D. Md. Nov. 10, 2011) (indicating assembler position could involve "putting small objects together" and "visually inspect[ing] items for defects); *Trim v. Astrue*, No. 2:09cv030, 2011 WL 5075641, at *4 (W.D.N.C. Oct. 26, 2011) (indicating assembler position could require depth perception). Further, "if a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work, or if an individual is not able to avoid ordinary hazards in the workplace," there will be significant erosion of the sedentary occupational base. SSR 96-9p. "An ALJ may not select and discuss only that evidence that favors his ultimate conclusion." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Here, the ALJ erred by relying on the VE's answer that Mr. Phillips' vision would not affect his ability to perform in the security guard or assembler positions. On remand, the ALJ must specify the functional effects of Mr. Phillips' vision impairments in his hypotheticals to the VE.[6]

---

[6] Any hypothetical questions posed to the VE on remand should also take into consideration all of Mr. Phillips' impairments after the ALJ properly considers Dr. Sowah's opinions and properly evaluates Mr. Phillips' credibility.

5

For the reasons set forth herein, Mr. Phillips' Motion for Summary Judgment (ECF No. 14) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 19) will be DENIED. The case is REMANDED to the Commissioner for further proceedings.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                              Sincerely yours,

                                              /s/
                                          Timothy J. Sullivan
                                          United States Magistrate Judge